UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-13647-RGS

BOSTON EXECUTIVE HELICOPTERS, LLC

v.

FRANCIS MAGUIRE, *et al.*

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

July 6, 2016

STEARNS, D.J.

Plaintiff Boston Executive Helicopters, LLC (BEH) is a Delaware limited liability company operating as a private air carrier at the Norwood Municipal Airport. Defendant Norwood Airport Commission (NAC) is a municipal agency of codefendant Town of Norwood, Massachusetts. Defendants Mark Ryan, Kevin Shaughnessy, Martin Odstrchel, Michael Sheehan, Leslie LeBlanc, and Thomas Wynne are current or former members of the NAC. Defendant Francis T. Maguire is the Norwood Airport Manager. BEH alleges that the Airport Commissioners and Airport Manager Maguire, individually, and in their official capacity, have conspired with defendant FlightLevel Norwood, LLC (FlightLevel), the Airport's private fuel provider, to perpetuate FlightLevel's monopoly over the sale of jet fuel at

Norwood Airport, and in so doing, have violated BEH's civil rights, contractual rights, and the state and federal antitrust laws.

## BACKGROUND

Norwood Municipal Airport is a public-use general aviation facility established pursuant to the Municipal Airport Act, Mass. Gen. Laws ch. 90, §§ 51D-51M (the NAC's oversight authority is derived from the same statute). Norwood Airport has received substantial state and federal assistance over the years, conditioned on the NAC's compliance with Grant Assurances issued by the United States Department of Transportation (DOT) and the analog Massachusetts DOT.[1] To meet the requirements of the Grant Assurances, the NAC has promulgated its own set of General Regulations and Minimum Standards (NAC Standards) governing airport operations. Among other provisions, the NAC Standards commit the NAC to the promotion of fair competition among the Airport's commercial operators.

_____

[1] The federal Grant Assurances provide in relevant part that the Airport remain open "without unjust discrimination to all types, kinds and classes of aeronautical activities". 62 Fed. Reg. 29,766. The Grant Assurances also mandate that the Airport will "permit no exclusive right for the use of the airport by any person providing, or intending to provide, aeronautical services to the public," and that the Airport "will not, either directly or indirectly, grant or permit any person, firm, or corporation, the exclusive right at the airport to conduct any aeronautical activities," including the sale of aviation petroleum products. *Id.* The Grant Assurances do, however, provide a relevant exception for certain fixed-base operators (FBOs).

As is typical of small airports, a single fixed-base operator (FBO), FlightLevel, has the exclusive right to provide aircraft fueling services. FlightLevel leases approximately 85% of the Airport's available ramp space. For several years, BEH, which holds a general flight operations permit, has sought to sell jet fuel at the Airport in competition with FlightLevel. The NAC Standards require an applicant for an FBO permit to make a good-faith capital investment in the Airport. To satisfy the requirement, BEH leased a 30,000 square foot plot at the Airport, on which it built a new hangar and underground fuel tanks. Despite the investment, the NAC has refused to act on BEH's FBO application.

BEH alleges that the refusal stems from collusion between the defendants and FlightLevel. Specifically, BEH alleges that the NAC and Maguire frustrated its permit application by demanding sensitive financial information from BEH's owners (which other FBO applicants were not required to provide); reneging on a confidentiality agreement that was to protect the production of that information; refusing to lease land to BEH of sufficient size to support an FBO operation; declining to consider evidence from a third-party financial analyst supporting BEH's fitness as a potential FBO; and refusing to comply with BEH's public records requests. BEH further alleges that the NAC, in retaliation for BEH's filing of two complaints

against it with the Federal Aviation Authority (FAA), improperly tabled BEH's application for an FBO permit, threatened to revoke its permit to operate at the Airport, and refused to hold public hearings on the merits of BEH's application.  BEH also alleges that the NAC and FlightLevel erected barriers to block access to BEH's hangar gates, and that when BEH obtained a preliminary injunction ordering the barriers removed, caused the Town of Norwood to file baseless criminal charges against it.

BEH initiated this action in Norfolk Superior Court on October 2, 2015. On October 26, 2015, Maguire removed the case to the federal district court with the consent of all defendants, asserting federal question jurisdiction. Defendants then filed a motion to dismiss.  On March 29, 2016, BEH responded by filing this Amended Complaint seeking a declaratory judgment determining the respective rights and obligations of BEH and the NAC (Count I).  The Amended Complaint further alleges breach of contract by the NAC (Counts II and III); promissory estoppel (detrimental reliance) against the NAC based on alleged misrepresentations regarding the FBO permit application process (Count IV); claims against all defendants under the Federal Civil Rights Act, 42 U.S.C. § 1983, based on alleged denials of BEH's right to procedural and substantive due process, violation of its right to equal protection under the law, and abridgment of its First Amendment rights

(Counts V, VI, and VII); a claim for interference by defendants with BEH's right to "use, enjoy and improve its property" by means of threats, intimidation, and coercion, pursuant to the Massachusetts Civil Rights Act (MCRA), Mass. Gen. Laws ch. 12, §11I (Count VIII); and finally, claims under the state and federal antitrust laws (Counts IX, X, XI, and XII).  Defendants renewed their motion to dismiss on May 6, 2016.

## DISCUSSION

To survive a motion to dismiss pursuant to Rule 12, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This standard requires more than "labels and conclusions" or "naked assertions devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  The court must accept the plaintiff's plausible factual allegations as true, but with respect to legal conclusions, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The defendants claim immunity from antitrust liability under the doctrine established in *Parker v. Brown,* 317 U.S. 341, 352 (1943), which shields anticompetitive restraints that have been established "as an act of [state] government."  That protection extends to acts of municipalities

effectuating a "state policy to displace competition with regulation or monopoly public service." *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 413 (1978). The policy must be "clearly articulated and affirmatively expressed," *id.* at 410, at least to the extent that it includes an explicit delegation of authority "that foreseeably will result in anticompetitive effects." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 43 (1985).

This court addressed an almost identical set of antitrust claims in *Rectrix Aerodrome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n*, 534 F. Supp. 2d 201, 205 (D. Mass. 2008), *aff'd,* 610 F.3d 8 (1st Cir. 2010). In *Rectrix*, as here, the plaintiff air carrier, operating out of a municipal airport where it rented space, sought to expand its business by selling jet fuel. This court found that defendant Barnstable Airport, which had refused to issue Rectrix the necessary FBO permit, was entitled to immunity under *Parker's* state action doctrine.

In affirming the decision, the First Circuit noted that the governing Massachusetts law permits airport commissions to "adopt rules and regulations for the use of municipal airports," Mass. Gen. Laws ch. 90, § 51J; to "determine the charges or rentals for the use of any properties, facilities, installations, landing fees, concessions, uses and services," *id.* § 51H, and to

lease airport land for up to 20 years "under such terms and conditions as it may prescribe, for hangars, shops, storage, industrial purposes, offices and other space rental, and for concessions," *id.* § 51F. *Rectrix*, 610 F.3d at 13. The Court of Appeals, like this court, read this statutory language as broadly reflective of the Legislature's "purpose to allow the suppression of competition." *Id.* The First Circuit also noted that the Massachusetts statute expressly rejected the suppression of competition in one specific area of operations (transportation to and from airports), indicating that it contemplated the lawful suppression of competition in others. *Id.* (citing Mass. Gen. Laws ch. 90, § 51M).

Seeking to cast doubt on the continuing validity of *Rectrix*, BEH cites a more recent Supreme Court municipal antitrust decision, *Fed. Trade Comm'n v. Phoebe Putney Health Sys.*, 133 S. Ct. 1003 (2013). In *Phoebe Putney,* the Supreme Court held that a Georgia state law permitting municipalities to create local Hospital Authorities vested with the power to acquire or lease property, set rates for services, to sue and be sued, borrow money, and otherwise exercise the powers of a private corporation, stopped short of an express delegation of the authority to act anticompetitively by failing the clear-articulation test. *Id.* at 1011-1012. "[W]hen a State's position 'is one of mere *neutrality* respecting the municipal actions challenged as

anticompetitive,' the State cannot be said to have "'contemplated'" those anticompetitive actions." *Id.* at 1012 (emphasis in original), quoting *Cmty. Commc'ns Co. v. Boulder*, 455 U.S. 40, 55 (1982).   There is, however, a crucial distinction between the Massachusetts Municipal Airports statute at issue in *Rectrix*, and the Georgia Hospital Authorities Law construed in *Phoebe Putney*, namely, the principle of *expresio unius est exclusio alterius*. As the First Circuit emphasized in *Rectrix*,

> [T]he Massachusetts statute involved here goes out of its way to include a section specifically prohibiting exclusive contracts related to transportation to and from the airport, *id.* § 51M, which surely suggests that the legislature did perceive that the airport might otherwise employ exclusivity restrictions (and chose to ban only this narrow set).

610 F.3d at 13.   Adhering to this reasoning, I am firmly of the view that the First Circuit's holding in *Rectrix,* that Massachusetts municipal airport commissions are immune from antitrust liability under the state action doctrine, survives *Phoebe Putney*.[2]   Consequently, the court will dismiss BEH's antitrust claims on grounds of state action immunity.

---

[2] This conviction is reinforced by Justice Sotomayor's reliance on *Town of Hallie, supra*, and *Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365 (1991), as illustrations of cases meeting the clear-articulation test, where despite the absence of an explicit grant of permission to suppress competition, one could infer from the logic of the statues an implicit contemplation by the respective Legislatures of a suppression of competition.   Here the contemplation is not implicit, but inferable from the

Defendants move to dismiss Counts II, III, and IV of BEH's Amended Complaint, all of which sound in contract, on the grounds that BEH has failed to show the existence of an agreement between it and the NAC. [3] BEH's counter-argument is that the sublease that it acquired from its predecessor, Swift Aviation Services, Inc. (Swift) [4] with the consent of the NAC, established an enforceable bilateral contractual relationship between it and the NAC.

---

Legislature's explicit decision to preserve competition in the airport transportation services sector.

[3] The defendants also ask the court to dismiss the declaratory judgment Count I of the Amended Complaint. Ordinarily, declaratory judgment is a means of determining the parties' rights so as to *avoid* impending litigation. *See, e.g., Dist. Attorney for the Suffolk Dist. v. Watson*, 381 Mass. 648, 659-660 (1980). In this case, litigation has already begun, and the relief sought by BEH (a declaration that BEH meets the minimum standards for an FBO permit and that the NAC did not consider its application fairly) is closely intertwined with the remaining count of the Amended Complaint (Count VII) that survives defendants' motion to dismiss. The court will consequently exercise its "substantial discretion" and dismiss Count I of BEH's Amended Complaint. *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 534 (1st Cir. 1995).

[4] In 1967, the Town of Norwood, through the NAC, entered a Prime Lease with Boston Metropolitan Airport, Inc. (BMA), a Massachusetts corporation that has had a longstanding business relationship with the Town. As early as 1942, BMA served as the property manager for the Norwood Airport, *Mayer v. Boston Metro. Airport, Inc.*, 355 Mass. 344, 345-346 (1969), and continues in that capacity today. In 1989, BMA executed a sublease for a 30,000 square foot plot with Stol Aircraft Corporation (Stol) with the NAC's consent. Dkt. # 25-2. In 1994, Stol assigned its interest in the sublease to Swift, to which BMA and the NAC both assented. *Id.* In 2011, Swift assigned its interest to BEH, again with the consent of BMA and the NAC.

BEH's argument fails as a matter of law.  In Massachusetts, as in the common law, no privity of contract (or estate) exists between a landowner and a subtenant.  *Dale v. H.B. Smith Co.*, 136 F.3d 843, 847 (1st Cir. 1998); *Rolfe v. Tufts*, 216 Mass. 563, 565 (1914); *see also Waldo v. Hall*, 14 Mass. 486, 487 (1787) (contracts between a landlord and tenant, and a tenant and subtenant, are separate and distinct agreements).  It is true that when the original tenant assigns its *entire* interest in the property to a sublessee, the sublessee acquires a privity of estate as well as contract, thereby releasing the original tenant from any continuing obligation to the landlord.[5]  *See Kaskel v. Hollander*, 68 F.2d 265, 267 (1st Cir. 1933).

In this case, the Town of Norwood, through the NAC (the landlord or prime lessor), agreed to lease the airport property to BMA (the prime lessee and sublessor).  BMA, in turn, sublet a portion of its tenancy to Stol (the sublessee).  Stol subsequently assigned the subtenancy to Swift, which in turn assigned it to BEH.  However, because BMA (the prime lessee) did not at any point assign the entirety of its interest in the sublease to any party in the chain of succession, BMA remains in privity of contract and estate with the NAC.  As none of the subsequent transactions between the successive

---

[5]  Hence, the anti-assignment clauses found in many leases.

sublessees severed or supplanted this relationship, there is no privity of contract (or estate) between the NAC and BEH to be breached. [6]

BEH's alternative claim to third-party beneficiary status under the contract between the NAC and BMA also fails.  To support this claim, BEH must demonstrate that the "language and circumstances of the contract [between the NAC and BMA] show that the parties to the contract clearly and definitely intended the beneficiary to benefit from the promised performance." *Doherty v. Admiral's Flagship Condo. Trust,* 80 Mass. App. Ct. 104, 111 (2011) (internal citations and quotation marks omitted).  Under Massachusetts law, only intended beneficiaries, not incidental beneficiaries, have standing to enforce a contract to which they are not a party. *Harvard Law Sch. Coal. for Civil Rights v. President & Fellows of Harvard Coll.*, 413 Mass. 66, 71 (1992); *see also Anderson v. Fox Hill Village Homeowners Corp.*, 424 Mass. 365, 367 (1997) (lessee assumed no contractual responsibilities expressly benefiting employees on the premises).

---

[6] BEH's quasi-contractual (promissory estoppel) claim cites no alleged statements by the NAC promising it (or anyone else) to do anything other than consider BEH's application for an FBO permit.  While BEH correctly observes that the NAC Standards required it to invest substantially in infrastructure and operations at the airport before its application would even be considered, there is no suggestion that there was ever any explicit promise that an FBO permit would be forthcoming as a result.

BEH has not alleged that any language in the prime lease, other than a boilerplate contemplation of the possibility of future sublease agreements, bestowed third-party beneficiary status on BEH (or any other past or future sublessee).[7]   BEH's bald and unsupported assertion that it is a third-party beneficiary of the prime lease, as set out in the Amended Complaint and the Omnibus Opposition, is a mouthful of empty rhetoric "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. *See Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 467 (2009) (rejecting third-party beneficiary claim where plaintiffs "assert[ed] merely the conclusion that they were third-party beneficiaries to the defendants' agreements without setting forth any factual allegations concerning the defendants' intentions.").

Defendants also seek dismissal of BEH's claim under 42 U.S.C. § 1983 that its Fourteenth Amendment right to procedural and substantive due process was violated by the handling of its FBO application.  "In procedural due process claims, the deprivation by state action of a constitutionally

---

[7] BEH does not suggest that anything in the generally tenant-friendly Massachusetts statutes operates to confer automatic third-party beneficiary status on a sublessee. Any such rule would likely have the effect of narrowing a tenant's rights by causing landlords to flatly ban or heavily tax the right of the tenant to sublet all or any part of its leasehold.  Courts are, for the most part, reciprocally consistent in rejecting landlords' claims of third-party beneficiary status under subleases.  *See, e.g., Osprey-Troy Officentre, LLC v. World Alliance Fin. Corp.*, 502 F. App'x 455, 459 (6th Cir. 2012); *Hibbs v. K-Mart Corp.*, 870 F.2d 435, 441 (8th Cir. 1989).

protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).   In order to substantiate a due process claim based on the deprivation of a property interest, "[t]he plaintiff must identify a legitimate claim of entitlement to the property in question . . . .   For this purpose, an abstract need *or* desire or a unilateral expectation are not sufficient to cement a constitutionally protected interest."   *Davis v. Coakley*, 802 F.3d 128, 134 (1st Cir. 2015) (internal citations and quotation marks omitted).   In the First Circuit, the burden on a plaintiff to establish a violation of procedural due process in a commercial land-use context is high.

> Every appeal by a disappointed developer from an adverse ruling by a local Massachusetts planning board necessarily involves some claim that the board exceeded, abused or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question under section 1983.

*Creative Env'ts, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir. 1982).

BEH does not challenge the adequacy of the pre-deprivation permit procedures *per se*; instead, BEH maintains that the NAC gave them short shrift.  Assuming *arguendo* that BEH has a protected property interest in an FBO permit, Massachusetts law clearly provides an adequate post-

deprivation remedy for procedural abuses (namely, certiorari appeal to the Superior Court, with the right to further appellate review). *See* Mass Gen. Laws. ch. 90, § 45; *see also Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 40 (1st Cir. 1992) (even where state actors "violate and abuse" pre-deprivation procedures, an adequate post-deprivation remedy precludes a due process claim).

The substantive due process facet of BEH's claim fares no better. "[S]ubstantive due process imposes absolute limits on State action, irrespective of what procedures are applied." *Miga v. City of Holyoke*, 398 Mass. 343, 354 (1986). Substantive due process claims unanchored in fundamental rights and liberties are, however, generally disfavored. *Nestor Colon*, 964 F.2d at 45; *see also Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) ("As a general matter, [we have] always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended.").[8] In matters of municipal governance, the First Circuit has set an extremely high threshold for substantive due process claims, leaving "the

---

[8] The Supreme Court has largely restricted substantive due process claims to a narrow band of fundamental rights. *See Albright v. Oliver*, 510 U.S. 266, 272 (1994) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.").

14

door slightly ajar for federal relief [only] in truly horrendous situations." *Nestor Colon*, 964 F.2d at 45.  As a result, a claim will not lie for a "run-of-the-mill dispute between a developer and a town official," but attaches only in a truly "conscience-shocking situation."  *Mongeau v. City of Marlborough*, 492 F.3d 14, 19 (1st Cir. 2007).  In support of its substantive due process claim, BEH recites in the most generic of terms defendants' "manipulation and abuse of their authority in order to delay, deter and injure BEH." Pl.'s Opp'n at 34.  No further precision is given.  In sum, the Amended Complaint fails utterly to allege the kind of "truly horrendous," conscience-shocking behavior that gives rise to a substantive due process claim.  *Nestor Colon*, 964 F.2d at 45.

Defendants next seek dismissal of BEH's "class of one" equal protection claim, as they allege that BEH fails to proffer more than a conclusory allegation that it is similarly situated to FlightLevel, the only relevant potential comparator.  Plaintiffs invoking equal protection in a commercial land-use dispute have a significant burden, even during the early stages of litigation, to identify a comparator or comparators similarly situated *in all relevant respects*. "The 'similarly situated'' requirement must be enforced with particular rigor in the land-use context because . . . [land use] decisions 'will often, perhaps almost always, treat one landowner

differently from another.'" *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007), quoting *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 565 (2000) (Breyer, J., concurring).  BEH's Amended Complaint simply states that both BEH and FlightLevel were commercial tenants at Norwood Airport seeking to do business as FBOs (in other words, the two companies were competitors, not necessarily comparators).[9]  Even at the pleading stage, conclusory and unsupported statements that a comparator was similarly situated justifies a dismissal.[10]  While "the degree of similarity required may be relaxed somewhat" where "the plaintiff has presented evidence of personal malice and 'bad faith' retaliation," *Cordi-Allen,* 494 F.3d at 251 n.4, no evidence of

---

[9] To the extent that further facts regarding the supposed similarity between the two companies are alleged in the Amended Complaint, they suggest that the companies are *not* in fact similarly situated (FlightLevel, unlike BEH, already controls over 500,000 square feet of ramp space at Norwood Airport; BEH is concededly a new market entrant, while FlightLevel has years of experience as an FBO at Norwood Airport).

[10] *See Freeman v. Town of Hudson,* 714 F.3d 29, 39-40 (1st Cir. 2013) (plaintiff's "failure to do more than conclusorily state that the [plaintiffs] were . . . similarly situated to . . . [alleged comparators] is insufficient to survive the defendants' motion to dismiss"); *see also Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 144 (1st Cir. 2016) (dismissing equal protection claim by managers of "land use project," where plaintiffs failed to allege that comparator projects were similarly situated in terms of location, age, and degree of environmental sensitivity).

malice on the part of any of the individual defendants is offered or imputed to the NAC by BEH.  Hence, the claim fails even under a "relaxed" test.  *Id.*[11]

While to this point BEH's constitutional claims fail to gain traction, there is more heft to the assertion that defendants retaliated against BEH to punish it for the exercise of its First Amendment rights.  Specifically, BEH contends: (1) that the NAC tabled consideration of its application for an FBO permit in response to its filing of a complaint with the FAA; (2) that the NAC refused to issue the permit, in part, because BEH publicly litigated the dispute in the press; and (3) that the NAC denied hearings on BEH's application in retaliation for BEH filing a public records lawsuit.  Pl.'s Opp'n at 22-26.  With respect to this claim, BEH has alleged facts that, if proven true, plausibly suggest that the NAC took adverse action against it in response to the exercise of three distinct, constitutionally protected activities.  The defendants' motion to dismiss Count VII will therefore be denied.

Defendants finally seek to dismiss BEH's claim under the MCRA that they have interfered with BEH's right to "use, enjoy and improve its

---

[11] The Amended Complaint makes a passing reference to a hearsay statement in which Maguire is said to have referred to one of BEH's principals as a "rich Jew."  Am. Compl. ¶ 150.  No attempt, however, is made to show that anti-Semitic bias infected the NAC's decision making process.

property" by means of "threats, intimidation, or coercion" intended to force BEH to withdraw its FBO application.  Am. Compl. ¶¶ 241-243.  For purposes of the MCRA, "a '[t]hreat' . . . involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. . . . 'Intimidation' involves putting in fear for the purpose of compelling or deterring conduct. . . . ['Coercion' involves] 'the application to another of such force, either physical or moral, as to constrain [a person] to do against his will something he would not otherwise have done.'" *Planned Parenthood League of Massachusetts, Inc. v. Blake*, 417 Mass. 467, 474 (1994).  While most cases decided under the MCRA involve a factual element of physical confrontation or force, "in certain circumstances, economic coercion, standing alone, may be actionable under the act." *Buster v. George W. Moore, Inc.*, 438 Mass. 635, 648 (2003).  *See Redgrave v. Boston Symphony Orchestra, Inc.*, 399 Mass. 93, 95 (1987) (third-party threats leading to the loss of a vested contractual right).

The one case of some potential help to BEH is *Kennie v. Nat'l Res. Dep't of Dennis*, 451 Mass. 754, 762-763 (2008).  In *Kennie*, plaintiffs had sought a permit to build a dock along their riverfront property.   They alleged that when they produced a favorable survey indicating that the dock would have a limited environmental impact on the local shellfish population, the town's

shellfish constable stated that he would do whatever it took to block the construction of the dock, and that he would "take care of" the plaintiffs' environmental survey.  Subsequently, the constable surreptitiously planted additional shellfish in the water near the site of the proposed dock to skew the results of a subsequent impact survey.  *Id.* at 756-757.  Convinced that pursing a permit would be futile in light of the constable's opposition, the plaintiffs abandoned the application.  The SJC, in overturning a grant of summary judgment to defendants, agreed that the mere denial of a land-use permit by local officials could not give rise to a constitutional deprivation, as the law gave plaintiffs no entitlement to the permit.  *Id.* at 761-762.  However, within the "distinct limits" of *Kennie*, plaintiffs had made a plausible showing that the constable's threats and his sabotage of the environmental survey amounted to an interference with an "interest in the land on which they had a constitutionally protected right to make improvements." *Id.* at 762.   This was all the more the case where the constable himself was not a decision maker with respect to the permit, but a third-party interloper attempting to meddle in the permit-granting process.  *Id.* at 756.

In  contrast  with  *Kennie*,  here  there  is  no  showing  that  the commissioner defendants  have  done  anything  more  than  refuse  to  act affirmatively  on  BEH's  application  for  an  FOB  permit.     "Adverse

19

administrative action, at least when not part of a scheme of harassment, does not amount to 'threats, intimidation or coercion.'" *Smith v. Longmeadow*, 29 Mass. App. Ct. 599, 603 (1990). *See also Roslindale Motor Sales, Inc. v. Police Comm'r of Boston,* 405 Mass. 79, 82 (1989) (frustrated permit applicant could show no constitutional deprivation of a property interest absent a legitimate claim of entitlement to the permit's issuance); *K. Hovnanian at Taunton, Inc. v. Taunton*, 37 Mass. App. Ct. 639, 646 & n.11 (1994) (same).[12]

## ORDER

For the foregoing reasons, the defendants' Motion to Dismiss is <u>ALLOWED</u> as to Counts I, II, III, IV, V, VI, VIII, IX, X, XI, and XII, and is <u>DENIED</u> as to Count VII.  Within fourteen (14) days of the date of the Order, the parties will submit a joint proposal for discovery directed to the surviving retaliation claim.

---

[12] BEH points to the NAC's tabling of its permit application, ostensibly with the aim of forcing it to withdraw its FAA complaint, as an example of coercive interference with its property rights.  While perhaps relevant to BEH's retaliation claim, because BEH had no entitlement to the permit itself, no property right is implicated by the deferral.  BEH's further claims that the NAC conspired with FlightLevel to place barriers blocking access to its hangar gate, and to cause baseless criminal charges to be brought against it after a court granted BEH a preliminary injunction mandating their removal, while possibly relevant to a showing of a pattern of retaliation against BEH for its exercise of First Amendment rights, but is not plausibly shown to be connected to the NAC's processing of BEH's permit application.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE