UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-13647-RGS

BOSTON EXECUTIVE HELICOPTERS, LLC

v.

TOWN OF NORWOOD, *et al.*

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

November 9, 2017

STEARNS, D.J.

The sole remaining count in this dispute alleges that the defendants –
Norwood Airport Commission (NAC or the Commission), the Town of
Norwood, and certain individual members of NAC[1] – retaliated against
plaintiff Boston Executive Helicopters, Inc. (BEH), after BEH filed
complaints against NAC with the Federal Aviation Administration (FAA).
The complaints arose out of BEH's frustrations over its efforts to obtain a
permit to expand its operations at Norwood Municipal Airport. BEH had

---

[1] The individual defendants are Mark Ryan, Kevin Shaughnessy,
Martin Odstrchel, Michael Sheehan, and Tom Wynne, individually and in
their official capacities as current or former NAC members. Defendants Paul
Shaughnessy, Leslie LeBlanc, and Hylie Hutchens were sued only in their
official capacity as current or former NAC members. Airport Manager
Francis T. "Russ" Maguire, who is not a member of the NAC, is named as a
defendant in both his individual and official capacity.

also filed a public records request and a state court lawsuit to compel the production of documents related to the Commission's delay in granting BEH the requested permit, and had made a series of comments in local news media regarding NAC's recalcitrance – all of which, BEH alleges, led NAC to retaliate by further delaying its permit application. Following discovery, NAC moved for summary judgment on the First Amendment retaliation claim. The court heard oral argument on October 24, 2017. The court will now deny the motion except as to defendants LeBlanc, Maguire, Paul Shaughnessy, and Hutchens.

## BACKGROUND

The court assumes familiarity with the facts of this case as set out in its previous Memorandum and Order on Defendants' Motion to Dismiss for Failure to State a Claim, *see Boston Exec. Helicopters, LLC v. Maguire*, 196 F. Supp. 3d 134 (D. Mass 2016),[2] and thus will set out only the facts germane to the First Amendment retaliation claim. BEH, a private air carrier

---

[2] In that Order, the court granted defendants' motion to dismiss with respect to the following claims: declaratory judgment (Count I); breach of contract (Counts II and III); promissory estoppel (Count IV); procedural and substantive due process, as well as equal protection (Counts V and VI); interference with BEH's right to "use, enjoy, and improve its property" by means of threats and coercion, in alleged violation of the Massachusetts Civil Rights Act (Count VIII); and alleged violations of federal and state antitrust laws (Counts XI-XII).

providing helicopter transit services in the greater Boston area, sought to boost its presence at the Norwood Airport by obtaining a permit to sell jet fuel in competition with another company, FlightLevel, which at the time had the exclusive right to provide fueling services at the Airport. NAC is a municipal agency of the Town of Norwood that oversees Airport operations, including implementation and enforcement of the Airport's General Regulations and Minimum Standards.[3] These standards require a company seeking a permit to operate as a Fixed-Based Operator (FBO) to make a good-faith capital investment in the airport. To that end, BEH leased a 30,000 square foot plot and built a new hangar and underground fuel tanks.[4]

On March 14, 2013 – the day after NAC voted to approve BEH's plan for the hangar and the underground fuel tanks – NAC wrote to BEH stating that "[i]f a properly resourced BEH were to apply for FBO status, and obtain a commercial permit from the NAC, then BEH could provide ground-

---

[3] The Minimum Standards are designed to ensure compliance with the Grant Assurances issued by the United States Department of Transportation and the Massachusetts Department of Transportation.

[4] BEH acquired this lot (Lot F) in 2011 from Swift Aviation, Inc., by an Assignment, Assumption and Amendment of Lease to which NAC was also a party. Am. Compl. ¶¶ 55-56. In negotiating the purchase, BEH agreed to pay a fuel flowage fee directly to the Town of Norwood, and later received approval from the Town Board of Selectmen for a Volatile and Inflammable Fluids (VIF) license pursuant to Mass. Gen. Laws ch. 148, which authorized BEH to construct the underground fuel tanks and hangar. *Id.* ¶¶ 59-60.

handling services to compete with FlightLevel." Am. Compl. ¶ 62. In January of 2014, BEH requested ramp space from NAC on the only remaining public ramp (the West Apron) that had not been leased to FlightLevel.[5] On March 17, 2014, NAC sent BEH a lease offer for 6,889 square feet on the West Apron. Later, in comments at a public hearing on April 9, 2014, BEH complained that the offered space was inadequate to support a full-service FBO. *Id.* ¶¶ 67-68.

At the next NAC meeting, on May 14, 2014, BEH sought to accept the Commission's offer, while intimating that it would continue to request additional ramp space. *Id.* ¶ 69. However, NAC treated BEH as having rejected the lease offer, and refused to acknowledge BEH's acceptance. *Id.* ¶ 70. BEH then requested a copy of the audio recording of the April 9, 2014 meeting in an effort to prove that it had not rejected NAC's offer – however, the tape had been destroyed. BEH then offered to lease the entire West Apron, and to pay for the full five-year lease in advance. *Id.* ¶ 73. NAC rejected the offer and made no counter-proposal. *Id.* ¶ 74.[6]

---

[5] According to the Amended Complaint, BEH had requested additional ramp space from NAC in early October of 2010, but had never received a favorable response. Am. Compl. ¶ 75.

[6] At the May 14, 2014 meeting, NAC requested that BEH provide it with: "a balance sheet, income statement, cash flow analysis, a business plan, market analysis, 12 months of bank statements, profit/loss statement,

On June 5, 2014, BEH responded by filing a complaint with the FAA pursuant to FAA Regulation Part 13, 14 C.F.R. § 13 *et seq.* (Part 13 Complaint). Am. Compl. ¶ 75. On June 11, 2014, NAC voted to table any consideration of BEH's lease and FBO permit application "based on a complaint letter received by the Commission but not yet read and discussed." NAC Meeting Minutes (June 11, 2014), Pl.'s Ex. 22. At the September 10, 2014 meeting, BEH President Christopher Donovan asked to speak, but was told that the Commission had a full agenda and could not accommodate him. At the October 10, 2014 meeting, NAC Chairman Ryan confirmed that BEH's FBO application remained "tabled." Pl.'s Ex. 30. BEH withdrew its Part 13 Complaint in November of 2014. No further action was taken on BEH's request for ramp space or FBO status for the duration of 2014.

On February 12, 2015, the defendants made a conditional offer to lease to BEH 11,786 square feet of space on the West Apron. Am. Compl. ¶ 80. BEH objected that the space was too small to support a full-service FBO, and that the conditions attached to the proposed lease exceeded NAC's own

---

feasibility study, 36-month projection, micro-macro, competitor's analysis, as well as a personal financial statement from principles [sic] behind BEH, because NAC is looking for every reassurance, [sic] they can get from an incoming vendor." NAC Meeting Minutes (May 14, 2014), Pl.'s Ex. 20.

Regulations and Minimum Standards.[7]  On March 11, 2015, BEH filed an administrative complaint with the FAA pursuant to FAA Regulation Part 16, 14 C.F.R. § 16 *et seq.* (Part 16 Complaint), alleging that NAC had violated the federal Grant Assurances and had engaged in discriminatory and exclusionary practices.  BEH also filed a public records request pursuant to Mass. Gen. Laws ch. 66, § 10.  When NAC refused to comply with the records request, BEH filed a lawsuit in the Norfolk Superior Court.  That Court ordered defendants to produce the documents requested by BEH by August 31, 2015.  At its September 30, 2015 meeting, the NAC again took no action on BEH's FBO permit application and instead voted to rescind the February 12, 2015 lease offer.  Am. Compl. ¶ 105.

Meanwhile, the quarrel between NAC and BEH spilled into the local news media.  In October of 2015, Commissioner Sheehan was quoted in the *Norwood Record* as saying that "[h]ad Boston Executive Helicopters provided the information that it agreed to in February instead of providing false information, threatening NAC with litigation and filing false complaints

---

[7] BEH alleges that NAC insisted on a "personal" guarantee for the lease and an irrevocable standby letter of credit, even though BEH had previously offered to prepay the entire 5-year lease, and that the requirement of a superfluous guarantee was imposed "as part of [NAC's] goal to delay, obfuscate and prevent BEH from accepting the lease offer." Am. Compl. ¶ 82.

to government agencies, it might find itself in a better position today." Pl.'s Ex. 82.

BEH brought this lawsuit in the Superior Court on October 2, 2015. NAC removed the case to this court on October 26, 2015. BEH, in turn, filed an Amended Complaint on March 29, 2016. On July 6, 2016, this court granted NAC's motion to dismiss the Amended Complaint with the exception of BEH's First Amendment retaliation claim. The court will now turn to that remaining claim.

## DISCUSSION

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of establishing the absence of a dispute by reference to documents contained in the record, after which "the burden shifts to the nonmoving party, who must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate

that a trier of fact could reasonably resolve that issue in her favor." *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010).  In evaluating a motion for summary judgment, the court draws "all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation."  *Shafmaster v. United States*, 707 F.3d 130, 135 (1st Cir. 2013).

As a threshold matter, defendants raise two arguments which they contend either deprive this court of jurisdiction or counsel in favor of abstention: first, that the dispute is moot because NAC agreed to issue the FBO permit in June of 2016 (subject to certain conditions), with which BEH's owner has testified that he has "no problem"; and second, that this court should abstain under the primary jurisdiction doctrine, at least while BEH's Part 16 Complaint remains pending before the FAA.  Neither argument has much sway.

First, even if the FBO permit had been granted in full, BEH's First Amendment retaliation claim seeks monetary and punitive damages, as well as reasonable attorneys' fees, for conduct that predates the granting of the permit.  *See* Am. Compl. ¶¶ 235-237.  "A case becomes moot . . . 'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669

(2016), *as revised* (Feb. 9, 2016) (quoting *Knox v. Service Employees Int'l Union Local 1000,* 567 U.S. 298, 307 (2012)); *see also Chafin v. Chafin,* 568 U.S. 165, 172 (2013) ("As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."). Here, BEH retains a concrete interest in the outcome of the litigation in the form of damages and fees.

The primary jurisdiction doctrine, on the other hand, counsels abstention only "[i]f an agency has the regulatory power to afford a plaintiff relief . . . , " *United States v. NSTAR Elec. Co.*, 220 F. Supp. 3d 162, 169 (D. Mass. 2016) (quoting *Columbia Chiropractic Grp., Inc.* v. *Trust Ins. Co.*, 430 Mass. 60, 62 (1999)), which obviously is not the case here where the claim involves First Amendment retaliation. The primary jurisdiction doctrine "does not apply when the critical issue turns on questions of law which have not been committed to the agency's discretion," *NSTAR*, 220 F. Supp. 3d at 170. It would be difficult to imagine a case more suited for adjudication in the federal courts – and less suited for litigation before the FAA – than a claim involving interference with protected constitutional speech.

Turning back to the merits. To make out a claim for First Amendment retaliation under 42 U.S.C. § 1983, a plaintiff must show "that [it] engaged in constitutionally protected conduct, and that this conduct was a substantial

or motivating factor for the adverse . . . decision." *Padilla-Garcia v. Guillermo Rodriguez*, 212 F.3d 69, 74 (1st Cir. 2000). Once the plaintiff has made a *prima facie* showing of retaliation, a defendant may prevail if it can "establish that it would have taken the same action regardless of" the plaintiff's protected activity, *id.*, commonly referred to as the *Mt. Healthy* defense. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

That BEH engaged in protected speech cannot be gainsaid. It is well settled that the First Amendment "protects the right of corporations to petition legislative and administrative bodies." *First Nat'l Bank of Boston v. Belotti*, 435 U.S. 765, 791 n. 31 (1978). Similarly, litigation itself is recognized as a form of protected speech, both as a means of vindicating legal rights and as a method of keeping the public informed on important issues of concern. *See In Re Primus*, 436 U.S. 412, 431-432 (1978).

In this case, a genuine dispute exists as to whether BEH's protected exercise of its right was a "substantial factor or a motivating factor for the defendants' retaliatory conduct." *Nextrix Aerodome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n*, 632 F. Supp. 2d 120, 131 (D. Mass. 2009), *aff'd*, 610 F.3d 8 (1st Cir. 2010). BEH claims that NAC refused to act on its FBO application, and instead imposed extraneous and onerous requirements on

BEH that were not assessed on FlightLevel or any other airport vendor – all in retaliation for its decision to file administrative complaints, records requests, and a lawsuit. NAC, for its part, attributes the delays to safety concerns regarding BEH's proposed fueling operation, its desire to obtain assurances regarding BEH's financial responsibility, and concerns over possible litigation by FlightLevel.

Discovery has failed to resolve the dispute. The minutes from the June 11, 2014 NAC meeting cite BEH's Part 13 Complaint as justification for the decision to table discussion of BEH's request for additional ramp space and an FBO permit. BEH argues that the decision to table "in light of BEH's Part 13 Complaint filing," Pl.'s Ex. 25, establishes a direct connection between its protected activity and NAC's refusal to act. Defendants, on the other hand, argue that Commissioner Michael Sheehan, who initially made the motion to table, was a relative newcomer to NAC and wanted time to familiarize himself with the Part 13 Complaint. Def's Mem. at 5, n. 10.[8]

_____

[8] In his deposition, Commissioner Kevin Shaughnessy testified that the filing of the Part 13 and Part 16 Complaints "didn't have an effect on me" and that BEH was "just doing what [they] think is best for [the] company." Shaughnessy Dep., Def's Ex. 9, at 125-128. Similarly, Maguire "recall[ed] the discussion about the [Part 13] complaint and the fact that not all commissioners had an opportunity to read it" as one of the reasons for the tabling and subsequent inaction. Maguire Dep., Def.'s Ex. 5, at 160.

Defendants' arguments may ultimately convince a finder of fact. However, given the explicit mention in the meeting minutes of the Rule 13 Complaint, and the temporal proximity between BEH's petitioning activities and NAC's failure to act on its FBO application, a reasonable fact-finder might also conclude that the adverse actions (or inactions) were taken in retaliation for BEH's protected conduct. *See Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 16 (1st Cir. 2011) ("Temporal proximity alone may, in certain circumstances, support an inference of retaliation.").

In short, the record plausibly supports competing inferences – that the application was tabled and no action taken because NAC needed time to review the Part 13 Complaint or, in the alternative, that NAC was irritated by BEH's petitioning and withheld consideration of the application to coerce BEH into withdrawing the FAA complaint. While BEH "has not presented overwhelming evidence that [NAC] acted with a retaliatory motive, [it] has adduced enough to defeat summary judgment," and the record "would not compel a finding that [NAC] would have taken the same action regardless" of BEH's protected conduct. *Welch v. Ciampa*, 542 F.3d 927, 941 (1st Cir. 2008).

The same is true with respect to the public records request and the Superior Court lawsuit. In a letter addressed to BEH's counsel, the Town's

attorney, Brandon Moss, described the public records request as "tantamount to harassment" and a "borderline misuse of the Public Records Law." Pl.'s Ex. 36, at 2. Commissioner Sheehan, in an email to Moss, described BEH's request as "absurd" and "a form of harassment that public officials certainly do not deserve." Pl.'s Ex. 37. Similarly, as the dispute festered in the fall of 2015, Commissioner Sheehan's comments to a local newspaper that BEH "might find itself in a better position today" had the company not "threaten[ed] the NAC with litigation and fil[ed] false complaints to government agencies," Pl.'s Ex. 82, provide more than passing support for the proposition that NAC was angered by BEH's petitioning activity behavior and stonewalled the FBO application as a result.

Finally, on June 13, 2016, in response to BEH's Part 16 Complaint, Attorney Moss wrote the following:

> BEH's conduct in connection with these three (3) lawsuits reflects BEH's litigious and adversarial nature, and the corresponding litigation risk emanating from BEH. Moreover, BEH's conduct only confirms the reasonableness of the Respondents' responses to BEH, as well as the reasonableness of the requirements imposed by the Respondents in connection with the fixed-base operator (FBO) commercial permit and lease sought by BEH.

Pl.'s Ex. 60. A reasonable fact-finder could again conclude that NAC's refusal to act was attributable to its resentment of BEH's petitioning campaign.

While the allegations are sufficient to survive summary judgment as to the Town of Norwood, NAC, and certain of the defendants, this is not the case with respect to *all* named defendants. First, there are no allegations in the Complaint (or evidence unearthed in discovery) that defendants Leslie LeBlanc, Hylie Hutchens, or Paul Shaughnessy were involved in any of the alleged retaliatory actions taken against BEH. The same is true of Airport Manager Francis Maguire. BEH has not put forward any evidence that Maguire played a decisional role in the dispute. As defendants point out, Maguire "is not a member of the Commission" and "does not have a vote" at meetings. Def's Mem. at 2, n. 3. While plaintiff alleges that Maguire harbored a personal animus against BEH, *see* Am. Compl. ¶ 150, there is no evidence tying this alleged animus to the failure of NAC to act more quickly on BEH's FBO application.[9]

With respect to the remaining defendants named in their individual capacities, the court cannot at this time determine whether, as NAC argues,

---

[9] Maguire testified that he does not "create policy for the airport," but instead "implement[s] the policies through the rules, the regulations of the Town of Norwood, [and] the Airport Commission," describing himself as a "compliance officer for the regulations that are put forward by the airport commission, the local airport regulations, [and] the state aeronautical regulations indirectly and also directly the federal aviation regulations." Maguire Dep., Def.'s Ex. 5, at 16.

they are entitled to qualified immunity. Qualified immunity exists to provide "breathing room [for public officials] to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. Al-Kidd,* 563 U.S. 731, 735 (2011). Under First Circuit case law, a "plaintiff may overcome qualified immunity by first making out the violation of a constitutional right, and second, establishing that the 'right was "clearly established" at the time of the defendant's alleged violation.'" *Decotiis v. Whittemore*, 635 F.3d 22, 36 (1st Cir. 2011) (quoting *Maldonado v. Fontanes*, 548 F.3d 263, 268-269 (1st Cir. 2009)). Identifying whether a right was "clearly established" consists of two sub-inquiries: "first, whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right,' and second, 'whether in the specific context of the case, a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights.' " *Id.* (quoting *Mosher v. Nelson,* 589 F.3d 488, 493 (1st Cir. 2009).

The difficulty posed by the qualified immunity question at this juncture is that the motivation behind the Commissioners' decision to table and postpone consideration of BEH's FBO permit application is likely to be dispositive as to the reasonableness of the defendants' actions and as to whether BEH's "clearly established" First Amendment rights were violated.

In other words, the Commissioners' qualified immunity defense depends on a factual finding that the delays were caused by genuine concerns over BEH's operations capacity and possible litigation from FlightLevel, rather than in retaliation for BEH's exercise of its protected First Amendment rights.[10]

Both Commissioners Sheehan and Kevin Shaughnessy voted to table BEH's application, citing the Part 13 Complaint, and both voted to rescind the February 12, 2015 lease offer at the September 30, 2015 Board meeting (as did defendant Ryan). Commissioner Ryan, who succeeded Tom Wynne as NAC Chairman, also testified to being present at the meeting when BEH's application was tabled. He described NAC as being of the view that it would be prudent to wait until BEH's Part 13 Complaint was resolved before proceeding on its FBO permit application. Ryan Dep., Def.'s Ex. 8, at 51. Commissioner Wynne served as NAC Chairman during the timeframe in which BEH's application was tabled, and attended and presided over the

_____

[10] NAC offers no other argument for qualified immunity outside of the cursory reference that NAC members consulted with legal counsel, with such consultation "compris[ing] only one factor, among many, that enters into the totality of the circumstances relevant to the qualified immunity analysis." Def.'s Mem. at 18 (quoting *Cox v. Hainey*, 391 F.3d 25, 35 (1st Cir. 2004)). In the defendants' Memorandum, this sentence is followed by citations to Attorney Moss's deposition where he specifically states that he did *not* provide legal advice to NAC members with respect to their decision to table the FBO permit application or on any other aspect of BEH's litigation activities and public statements during the pendency of this dispute. *See* Def.'s Mem. at 19-21.

pertinent meetings, in addition to casting votes.  Commissioner Odstrchel had been a Board Member since 2009 and was involved in the deliberations over BEH's application; in his deposition he testified that NAC had "concern[s]" about "civility" with respect to BEH.  Odstrchel Dep., Def's Ex. 7, at 104.    In short, the record establishes that these defendants were sufficiently involved in the decision-making process with respect to BEH's FBO application that, if a jury were to credit BEH's allegations of retaliatory motive, the allegations would suffice to make out a *prima facie* case of First Amendment retaliation.

Finally, defendants seek summary judgment on the claims brought against the Commissioners and the Town in their official capacity.[11]  As a general rule, a claim made against a town official in his official capacity "is merely a claim against the Town," *Doe v. Bradshaw*, 2013 WL 5236110, 11-cv-11593-DPW, at *4, n.4 (D. Mass. Sept. 16, 2013), and a plaintiff can only state a claim under § 1983 against a municipality when the actions in question "constitute a policy or custom attributable to the Town."  *Young v. City of Providence*, 404 F.3d 4, 26 (1st Cir. 2005).  The Supreme Court in its seminal decision on the subject, *Monell v. Dep't of Social Servs. of City of*

---

[11] A municipality has no immunity from suit (qualified or absolute) under § 1983.  *See Owen v. City of Independence,* 445 U.S. 622, 657 (1980).

*N.Y.*, 436 U.S. 658 (1978), made clear that a local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents" under a theory of *respondeat superior*, but may only be liable when the activity in question constitutes the "execution of a government's policy or custom." *Id.* at 694. Official policy may be reflected in actions taken by boards, agencies, or other municipal sub-units exercising authority delegated to it by the legislature. *Monell*, 436 U.S. at 694; *see also Perkins v. Londonderry Basketball Club*, 196 F.3d 13, 18 n.3 (1st Cir. 1999) (noting that for purposes of § 1983 liability, "'[s]tate action,' of course, includes action not only by states, but also by their political subdivisions (e.g., cities and towns))." (citations omitted).

NAC argues that because there is only one permit application at issue, BEH has not sufficiently limned a "policy or custom" on the part of the Town of Norwood. However, under a Supreme Court line of cases beginning with *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), municipal liability can result from a single act so long as the act constitutes a "deliberate choice . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483-484; *see also Ciampa*, 542 F.3d at 942 ("We are bound by *Pembaur* and conclude that a single decision by a final policymaker

can result in municipal liability."); *Scott-Harris v. City of Fall River*, 134 F.3d 427, 436 (1st Cir. 1997), *overruled on other grounds sub nom.*, *Bogan v. Scott-Harris*, 523 U.S. 44 (1998) ("Clearly, a municipality may be held liable under section 1983 for a single ordinance or piece of legislation.").

Cases subsequent to *Pembaur* have tasked the trial judge with the responsibility of "identify[ing] those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). The question of "whether a particular official has 'final policymaking authority' is a question of state law," also for the trial judge to answer. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (citing *Pembaur*, 475 U.S. at 483). Massachusetts law requires that a plaintiff "offer in evidence local city ordinances pertaining to the [individual's] position of authority within the city's hierarchy," or some other "evidence of custom or usage having the force of law" which is sufficient to establish that that a given defendant was a final policy-maker. *Russell v. City of New Bedford*, 74 Mass. App. Ct. 715, 722 (2009).

The court has little difficulty concluding that BEH has met its burden of demonstrating that NAC qualifies as the final decision-making authority

within the Town of Norwood with respect to the claims at issue.  The parties agree that the NAC is an "agency of the Town [of Norwood] established as the operating authority of the Airport."  *See* Am. Compl. ¶ 12; Def.'s Answer ¶ 12 (Dkt #44).  The Commission was established pursuant to Mass. Gen. Laws ch. 90, § 51E, which provides that "[i]n any city or town in which an airport is established . . . there shall be established a board consisting of an odd number of members . . . which shall have the custody, care, and management of the municipal airport."

NAC's responsibility for the promulgation and enforcement of regulations and minimum standards comes from Mass. Gen. Laws ch. 90, § 51J, which requires that that an airport commission "adopt rules and regulations for the use of municipal airports" and that such regulations "shall conform to and be consistent with the laws of the commonwealth."  NAC is also delegated the responsibility of compliance with federal law as a condition of receiving federal funds.  *See* 49 U.S.C. §§ 40103(e), 47107(a)(4). Finally, while the Norwood Town Board of Selectmen appoint the individual NAC members, as defendants concede, the "Board of Selectmen otherwise has no role in the governance of the Commission" and "has no role in the day-to-day affairs or operations" of the airport.  Def.'s Mem. at 4, n. 6.  From this, it is clear that the members of the Commission constitute "the highest

officials responsible for setting policy in [this particular] area of the government's business," *id.* at 123.  Thus, BEH may proceed in its suit against the Town and the remaining NAC Commissioners in their official capacities "under the 'single-decision/act' exception to *Monell*'s policy or planning rule."[12]  *Russell*, 74 Mass. App Ct. at 720.

## ORDER

For the foregoing reasons, the defendants' Motion for Summary Judgment is <u>DENIED</u> with the exception of defendants Leblanc, Paul Shaughnessy, Hutchens, and Maguire, as to whom the motion is <u>ALLOWED</u>. The Clerk will set the case to be tried to a jury.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE

---

[12] While the court denies summary judgment as to the First Amendment claim brought against the Town and the remaining Commissioners in their official capacities, the court also notes that insofar as BEH's Amended Complaint seeks punitive damages, such damages are unavailable in § 1983 suits brought against municipal entities.  *See City of Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981) (finding "that considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials.").