UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-13647-RGS

BOSTON EXECUTIVE HELICOPTERS, LLC

v.

FRANCIS T. MAGUIRE, et al.

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO ENFORCE
SETTLEMENT AGREEMENT, IMPOSE SANCTIONS,
AND AWARD ATTORNEYS' FEES

November 20, 2020

STEARNS, D.J.

After prolonged litigation, plaintiff Boston Executive Helicopters, LLC (BEH), and defendants Town of Norwood (Town), Norwood Airport Commission (NAC), and the individually named Town and NAC officials (collectively, Norwood) reached an agreement to settle their dispute on the eve of a December 10, 2018 trial. Months of contentious motion practice followed over what the parties had exactly agreed upon. After some prodding by the court, on July 30, 2019, the parties reported that they had achieved a "valid, enforceable settlement agreement (Agreement)." Dkt # 220. At the parties' request, the court agreed to retain jurisdiction to enforce the terms of the Agreement should it become necessary. *See* Dkt # 228. The parties

stipulated to a dismissal of the litigation with prejudice on September 12, 2019. *See* Dkt # 229.

BEH now alleges that defendants have breached six provisions of the Agreement, *see* Dkt # 234-1 (Agm't), and seeks specific performance and the imposition of sanctions. BEH asserts that defendants (1) failed to provide BEH an encumbrance-free lease for the promised amount of ramp space at Norwood Airport; (2) undermined BEH's petition to the FAA seeking approval for the removal of all taxi lane object free area (TOFA) markings on Taxiway 3;[1] (3) failed to contemporaneously distribute copies of all email and correspondence by, between, and among the Town, NAC, FlightLevel, and/or BEH; (4) refused to allow BEH to participate in meetings with the FAA or to have a "seat at the Table" in negotiating a Joint Corrective Action Plan (JCAP); (5) failed to provide proper oversight by the Board of Selectmen

---

[1] BEH also lists as a breach of the Agreement that Norwood failed to provide the "appropriate turn around" at the Taxiway 3 access area. Mot. at 1. It is unclear whether BEH's complaints about Taxiway 3's supposedly inadequate turn around and its attempt to remove the TOFA markings are related. In any event, the court recognizes that the Agreement requires NAC "to construct a pedestrian access gate at Taxiway 3 . . . within ninety (90) days of the execution of this agreement" that has "[a]ppropriate turnaround and lighting." Agm't § 4. However, neither party has addressed this purported violation of the Agreement with sufficient detail for the court to rule on the claim of a breach.

over dealings between NAC and BEH; and (6) retaliated against BEH in response to its demands. Mot. at 1-2.

## DISCUSSION

"[A] suit to enforce a settlement is a contract dispute which requires a new jurisdictional basis to be heard in federal court." *Quincy V, LLC v. Herman*, 652 F.3d 116, 121 (1st Cir. 2011). However, "[a]ncillary jurisdiction exists where the district court has ensured its continuing jurisdiction to enforce a settlement agreement . . . by 'including a provision explicitly retaining [enforcement] jurisdiction.'" *Baella-Silva v. Hulsey*, 454 F.3d 5, 10 (1st Cir. 2006), quoting *Lipman v. Dye*, 294 F.3d 17, 20 (1st Cir. 2002).

The court agreed to "retain jurisdiction over th[is] case to resolve any disputes that may arise *from the implementation of the settlement agreement's terms.*" Dkt # 228 (emphasis added). Any grievances that arise outside of the four corners of the Agreement, however, lie outside the ambit of the court's jurisdiction. *Cf. Lipman*, 294 F.3d at 21.

### Violations of the Agreement

A settlement agreement is interpreted in the same manner as any other contract. *See, e.g.*, *Perry v. F.D.I.C.*, 2010 WL 5349883, at *6 (D. Mass. Dec. 21, 2010). Contract interpretation is generally a question of law for the court. *Teragram Corp. v. Marketwatch.com, Inc.*, 444 F.3d 1, 9 (1st

3

Cir. 2006).  The court construes the Agreement as an integrated whole according to its plain meaning, *McAdams v. Mass. Mut. Life Ins. Co.*, 391 F.3d 287, 298-299 (1st Cir. 2004), and will enforce any unambiguous terms, *Schwanbeck v. Fed.-Mogul Corp.*, 412 Mass. 703, 706 (1992).

1) *Lease for West Apron and DC-3 Ramps*

BEH first argues that Norwood failed to provide it with a lease for the Agreement's promised amount of ramp space "free of encumbrances" because FlightLevel, another airport operator, has claimed preexisting access rights over the same ramp space.  Mot. at 1, 15-16.  Norwood responds that BEH received a proposed lease consistent with the terms of the Agreement.

Norwood has the better of the arguments.  The Agreement entitles BEH only to "standard form, *non-exclusive* lease agreements . . . for . . . the West Apron . . . and . . . the DC-3 Ramp."  Agm't § 3 (emphasis added).  The term "non-exclusive" means "not limited to only one person or organization, or to one group of people or organizations."[2]  This language does not support BEH's demand for a lease "free of encumbrances."  BEH received what it was

---

[2] Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/non-exclusive (last visited Nov. 19, 2020).

4

due under the Agreement, that is, a lease granting unrestricted access to the ramp space.

BEH makes no forceful argument to the contrary but contends that Norwood "concealed" FlightLevel's access rights during the settlement discussions and now "attempt[s] to re-write history." Mot. at 4-9; Reply at 7. The court will not consider this allegation for two reasons (putting aside the improbability that BEH would never have taken note of FlightLevel's airport operations). First, courts do not consider extrinsic evidence when a contract's language is unambiguous, as is the case here. *Sound Techs., Inc. v. Hoffman*, 50 Mass. App. Ct. 425, 429 (2000). Although BEH ostensibly "would never [have] accept[ed] a lease that had encumbrances," Mot. at 9, BEH's submissions concerning the parties' negotiations and performance of the Agreement are an attempt to vary the plain meaning of terms under which it in fact accepted the lease. *See* Pls.' Reply at 1-7. The Agreement's integration clause, *see* Agm't § 21, cements this conclusion. *Simon v. Simon*, 35 Mass. App. Ct. 705, 713 n.9 (1994) (a finding that an agreement is not integrated is a "predicate" to considering extrinsic evidence). Second, BEH's theory sounds in fraud in the inducement, not enforcement of a contract, and

thus exceeds the court's ancillary jurisdiction over the enforcement of the Agreement.[3]

Because BEH does not contest that Norwood offered non-exclusive leases to the West and DC-3 ramps, the court finds that Norwood complied with its obligations as to this provision of the Agreement.

2) *Removal of TOFA Markings*

BEH next argues that Norwood undermined its petition to the FAA to remove TOFA markings on Taxiway 3 – and in fact submitted even more stringent TOFA measurements to the FAA in its 2020 Technical Master Plan Update (TMPU). But Norwood states that it met its full obligation under the Agreement when it submitted a letter in support of BEH's petition to the FAA.

The Agreement provides:

> "BEH shall prepare a petition to the FAA, with appropriate plans or drawings, seeking approval for the removal of all TOFA . . . markings on Taxiway 3. The NAC shall submit a letter to the FAA in support of BEH's petition . . . within thirty (30) days after the receipt of BEH's submission to the FAA. *If approved by the FAA*,

---

[3] While "a trial court may not summarily enforce a purported settlement agreement if there is a genuinely disputed question of material fact regarding the existence or terms of that agreement," *Malave v. Carney Hosp.*, 170 F.3d 217, 220 (1st Cir. 1999), here the parties do not dispute the existence or wording of the Agreement. *See* Dkt # 220, Reply at 7. BEH cannot simultaneously allege fraud in the inducement to overcome the integration clause, *see* Reply at 7-8, while representing that the Agreement is valid.

>   the TOFA/OFA markings on Taxiway 3 shall be removed by the
>   NAC within sixty (60) days."

Agm't § 9 (emphasis added).

The parties agree that NAC sent a letter supporting BEH's petition to the FAA on November 20, 2019, but quibble over whether NAC acted within the 30-day window stipulated in the Agreement. *See* Mot. at 10; Opp'n at 11-12.[4] Even if NAC bumbled this deadline, it is not clear what relief the court could order. BEH seeks specific performance, yet NAC did send the supportive letter required by the Agreement over a year ago, and there is no argument that it was received too late by the FAA to be considered in its ruling on BEH's petition. *See, e.g., Med. Prac. Mgmt., Inc. v. Bos. IVF, Inc.*, 67 Mass. App. Ct. 1102, 1102 n.3 (2006) ("[Plaintiff's] claim for specific performance of an accounting is moot as the accounting had been completed."). It is not alleged that the FAA granted BEH's petition, which was a prerequisite to NAC's removal of the TOFA markings, and the Agreement, of course, had no binding effect on the FAA's decision making (nor could it have).[5]

---

[4] Norwood maintains that BEH did not provide "appropriate plans or drawings" with its initial August 26, 2019 petition, and that Norwood did not receive notice of BEH's October 16, 2019 correction until October 31, 2019. Opp'n at 11; Makarious Aff. ¶ 21; Dkt # 243-19.

[5] BEH's secondary argument that NAC's implementation of stricter TOFA markings at BEH's hangar in June of 2020 "violates the letter and

3) *Distributing Correspondence*

BEH next alleges that Norwood breached the Agreement by failing to circulate contemporaneously all correspondence between itself, NAC, FlightLevel, and/or BEH. Norwood counters that BEH does not identify any correspondence which has allegedly been withheld. Opp'n at 13.

According to a handwritten clause in the Agreement:

> For a period of eighteen (18) months following execution of this Agreement . . . the Town and the NAC agree to copy, or distribute copies, to both BEH and FlightLevel . . . any and all email and correspondence, by and between the NAC and BEH or F[lightLevel], contemporaneously with any such communications.

Agm't at 6.

Norwood represents that it "has provided [to] BEH and FlightLevel a weekly package" of correspondence since entering into the Agreement

---

spirit of the . . . Agreement" also fails. Mot. at 11. The structure of § 9 limits Norwood's obligation to "support" the removal of TOFA markings only in its submission to the FAA. The court agrees with Norwood that "nothing in the Agreement guarantees BEH a lease area free of TOFAs" – especially since the Agreement provides for a *non-exclusive* lease – and the process for petitioning the FAA outlined in § 9 reflects that these markings are "not within Norwood's sole power to remove." Opp'n at 5.

Nor do the increased TOFA markings violate the terms of BEH's ramp leases. Reply at 5-7. The Agreement entitles BEH to approximately 72,000 sq. ft. at the West Apron and 15,295 sq. ft. at the DC-3 Ramp but is otherwise silent as to the nature of the leased space. *See* Agm't § 3. The court will not enjoin NAC from a "plan to increase the TOFA/OFA area to the detriment of BEH," Mot. at 16, because the Agreement makes no provision for granting this type of relief.

8

although acknowledges belatedly turning over a few hundred pages of correspondence in July of 2020. Opp'n at 12-13. To the extent that these communications form the basis of BEH's claim, *see, e.g.*, Donovan Aff. ¶ 129 (listing documents already produced as examples of Norwood's breach), it is unclear what relief BEH seeks, as this provision of the Agreement was eventually, if unevenly, performed. While BEH also claims that "other letters and communications have apparently not been provided to BEH despite many requests," Mot. at 13, it does not identify any documents specifically or generically that it has in mind. The court cannot order the production of documents that a party cannot identify or describe.

 4) *Joint Corrective Action Plan*

  BEH also challenges Norwood's alleged failure to allow BEH to participate in FAA meetings or to have a "seat at the Table" in negotiating a JCAP to remedy Norwood's alleged violations of FAA leasing requirements. BEH states that, other than attending two meetings in October of 2019, it has not attended any subsequent meetings regarding the JCAP – and further that the October meetings did not include the FAA.

  The Agreement provides "that BEH shall be allowed to participate in any meetings . . . regarding the negotiation with the FAA regarding . . . the goal of crafting a '[JCAP].'" Agm't § 8. BEH's argument that this language

9

of the Agreement entitles it to a "seat at the Table" with the FAA and the right "to attend any FAA meetings regarding the [J]CAP" is something of a stretch. Donovan Aff. ¶¶ 140-141, 144. BEH attempts to equate meetings "*regarding*" the subject of FAA negotiations (which is what the Agreement stipulated) with meetings at which the FAA is in attendance.[6] BEH's involvement in the October 9 and 15, 2019 meetings, which are the only meetings regarding the JCAP that have taken place thus far, *see* Pls.' Reply at 12, fully satisfies the terms of the Agreement.

5) *Board of Selectmen Oversight*

The next alleged violation of the Agreement concerns whether the Board of Selectmen provided proper oversight of dealings between NAC and BEH given that the Board's liaison also "represents . . . NAC and the Town." Mot. at 15; Donovan Aff. ¶¶ 137-139. More specifically, the designated liaison is a member of the law firm that represents the collective defendants in this litigation. As the designated liaison, he participated in the operational

---

[6] At most, the Agreement requires the NAC to "allow BEH to explain to the FAA its view of the value of the so called Verizon land to the NAC, and offer suggestions as to why it should be recovered by the NAC for aeronautical use." Agm't § 8. This language, which is silent on how BEH was to go about providing this explanation, does not require a face-to-face meeting between BEH and the FAA.

10

meetings held between the Board, NAC, and BEH in August and September of 2020.  Makarious Aff. ¶¶ 26.

Under the relevant terms of the Agreement, the Town's "Board of Selectmen[] shall appoint a member of the Board . . . or a designated liaison to attend NAC meetings at which an item concerning or related to BEH . . . appears on the NAC agenda for eighteen (18) months."  Agm't § 5.  The Agreement also requires "the Airport Manager, a representative of the NAC, the Selectmen liaison . . . and a representative of BEH [to] meet monthly in a good faith effort to discuss operational issues and to resolve specific disagreements or disputes that may arise between them."  *Id.* § 6.

"[A] contract is to be construed to give reasonable effect to each of its provisions."  *McMahon v. Monarch Life Ins. Co.*, 345 Mass. 261, 264 (1962).  While the language of § 5 requires the Board to "designate[] [a] liaison," it does not specify that the chosen liaison be independent of any ties with Norwood or be a disinterested party.  Nor does § 5 preclude the liaison from filling dual roles at required meetings.  BEH does not maintain, nor would it have standing to assert, a conflict of interest between the Board and NAC, the parties represented by the Board's chosen liaison.  Contrary to BEH's contention that this arrangement "effectively provid[es] no oversight whatsoever" because the Board's liaison owes a duty of loyalty to NAC,

11

Donovan Aff. ¶ 139, BEH does not allege that the interests of Norwood's counsel are inconsistent with the liaison's responsibilities under the Agreement, such as "periodically report[ing] to the Board of Selectmen." Agm't § 5.

6) *Retaliation Against BEH*

Finally, BEH argues that Norwood has breached the Agreement by retaliating against BEH for exercising its constitutional right of petition. Although Norwood provides no response to this argument, the court will not consider the allegation. Retaliation is not a contractual breach, but rather an independent legal claim, which exceeds the court's ancillary jurisdiction to enforce the Agreement.

## Sanctions and Attorneys' Fees

BEH seeks sanctions, namely attorneys' fees and 0ther costs, for the alleged breaches of the Agreement. BEH proffers two theories to support the request for fees: bad faith and the third-party exception.

A court may award sanctions, including attorneys' fees, upon finding that a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. Nesco, Inc.*, 501 U.S. 32, 45-46 (1991), quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 258-259 (1975); see also *Mullane v. Chambers*, 333 F.3d 332, 337-338 (1st Cir. 2003). But

12

"a court's inherent power to shift attorneys' fees 'should be used sparingly and reserved for egregious circumstances.'" *Whitney Bros. Co. v. Sprafkin*, 60 F.3d 8, 13 (1st Cir. 1995), quoting *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 3 (1st Cir. 1993).

Underlying BEH's theory of bad faith is the allegation that Norwood's "bait and switch" tactics during settlement discussions concealed the encumbrances on BEH's lease. But this argument fails for the same lack of jurisdiction that defeats many of BEH's alleged violations of the Agreement. Even if the court had the authority to consider the settlement negotiations, "it is impossible for the court, given the vehemence of the accusations and counter-accusations, to sort out who bears responsibility for the[se] painful disputes." *LD Assocs., Inc. v. Krant*, 2010 WL 4485900, at *1 (D. Mass. Nov. 9, 2010) (Ponsor, J.) (denying motions for sanctions because the parties failed to demonstrate bad faith). And the court cannot accept that BEH was forced "to expend a significant amount of money litigating the enforceability of the settlement just to obtain that for which it originally bargained," Mot. at 19, given that the court has found no material breaches of the Agreement itself.

BEH's argument for applying Massachusetts's third-party attorney fee exception, pursuant to which "attorneys' fees can be collected as part of

damages when 'tortious conduct . . . requir[es] the victim of the tort to sue or defend against a third party in order to protect his rights,'" *RFF Family P'ship, LP v. Ross*, 814 F.3d 520, 535 (1st Cir. 2016), quoting *M.F. Roach Co. v. Town of Provincetown*, 355 Mass. 731, 732 (1969), is also unavailing.  BEH alleges that Norwood's nondisclosure of encumbrances on the leased ramps caused BEH to be sued by FlightLevel over the disposition of this third party's property rights.  As explained above, the court lacks jurisdiction to pass on the settlement negotiations; it follows that it cannot award sanctions for a dispute that it cannot evaluate.

Because the court does not find that BEH was "denied the resolution for which it bargained," Mot. at 19, there is no proper basis for an imposition of sanctions.

## ORDER

For the foregoing reasons, BEH's motion to enforce the settlement agreement, impose sanctions, and award attorneys' fees is <u>DENIED</u>.

        SO ORDERED.

        /s/ Richard G. Stearns_____
        UNITED STATES DISTRICT JUDGE